## Reich's Estate.

*Wills—Legacies—Husband and wife—Legacies to wife—Construction—Intention.*

Where a testator bequeathed his whole estate for the use of his wife for life should she so long continue his widow and provided "Should she remarry, or at her death, I direct that all my real and personal effects whatsoever then remaining shall be sold......as soon as conveniently can be after such remarriage or death, and converted into money and the one-third of all such moneys should be set apart and paid to my said wife......the same to be in lieu of her dower at common law," the gift to the wife was properly held to be an absolute interest in one-third of his estate only in the event of her remarriage; during her widowhood, the widow was entitled to the use of the income only and upon her death without having remarried her interest in her husband's estate terminated.

Argued Oct. 14, 1914. Appeal, No. 77, Oct. T., 1914, by the Colonial Trust Company, Administrator of Gertrude Reich, deceased, from decree of O. C. Allegheny Co., Nov. T., 1913, No. 124, dismissing exceptions to decree of distribution in estate of Gertrude Reich, deceased. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Exceptions to decree of distribution.

OVER, P. J., filed the following opinion:

Konrad Reich died testate, making the following disposition of his estate:

"I give, devise and bequeath unto my executors hereafter named, all my real and personal estate and effects whatsoever and wheresoever that I may die possessed of, or entitled to, in trust and for the sole use and benefit, however, of my beloved wife, Gertrude Reich, during the term of her natural life, should she so long continue my widow. Should she remarry, or at her death, I direct that all my real and personal effects whatsoever

then remaining, shall be sold at auction or private sale, as it may, in their judgment seem the most advantageous, as soon as conveniently can be after such remarriage or death, and converted into money, and the one-third of all such moneys shall be set apart and paid to my said wife, Gertrude, the same to be in lieu of her dower at common law."

He gave the residue of his estate to three sons, subject to the payment of $2,000 to his daughter, Josephine.

His widow did not remarry. After her death, the reality was sold by the executors and its proceeds and $575.75 of personalty constitutes the fund here for distribution.

The question is whether the widow's administrator takes under the will one-third of this fund?

It seems the intention of the testator was to provide for his wife during widowhood by giving her the income of his whole estate, or, if she remarried, by giving her one-third absolutely, her life interest to terminate. In making this alternative provision, it is evident that the testator thought that if she remarried and thus terminated her life estate, she would still have an interest in his real estate, as he expressly stipulated the gift should "be in lieu of her dower at common law." It must be presumed, however, that he knew that this interest would terminate at her death. The reason for making the gift would then be eliminated and the inference seems to be that the gift of one-third of his estate was conditional upon her remarriage.

There is no question that if the will be construed as written, one-third of his estate vested in her absolutely, but in Hankins' Est., 4 W. & S. 300, where the testator made a provision similar to this viz:

"To my daughter, Ann, I give and devise the farm and all the personal property which I now possess and whereon I live, provided she does not get married; also the house and lot on the Monongahela river, on the same conditions. Should she get married, the said property

shall be given up and in lieu thereof, I give and devise to her $500. Should Ann die or get married, then the real and personal property willed to her to be sold and equally divided amongst the surviving heirs, Ann to be considered as one of the heirs."

Ann died unmarried, without issue, and it was held that the proceeds of the sale of the farm were to be divided among the surviving children and grandchildren of the testator, and that the executor of Ann was not entitled to any part of it.

In discussing the question, Mr. Justice ROGERS said:

"The strict grammatical sense is not always regarded, but the words of a will may be transposed to make a limitation sensible and to carry into effect the general intention of the testator......Here the general intention of the testator was to make a comfortable provision for his daughter Ann during her life......It is contended that the words 'surviving heirs' applies to her death as well as marriage and that she is a surviving heir in the contemplation of the testator, although she is dead. But this is a palpable absurdity for which no rational reason has been given; for there is nothing in the suggestion that the testator was desirous that she should have power to dispose of her share of the estate to those who might be heirs to her. Of this there is nothing in the will. It is but a fanciful notion resting on conjecture merely. But by a transposition of the language we give every word in the will its proper and legitimate signification. Thus by applying the words 'Ann to be considered as one of the heirs' to her if she married, we effectuate the intention of the testator by giving her $500 and equal dividend of the property sold and thus producing an equality, as he intended, among his children."

So here, by transposing the phrase "and the one-third of all such moneys shall be set apart and paid to my said wife, Gertrude, the same to be in lieu of her dower at common law," and reading it in immediate connection

with the preceding phrase "after such remarriage," effect is given to what seems to have been the testator's intention—to give his widow a life estate only if she remain unmarried. The claim of her administrator cannot, therefore, be allowed.

The court dismissed the exceptions. The Colonial Trust Company, administrator of Gertrude Reich, deceased, appealed.

*Error assigned* was in dismissing the exceptions.

*H. Zacharias,* with him *H. M. Scott,* for appellant.

*W. Heber Dithrich,* with him *Thomas & Arthur,* for appellees.

PER CURIAM, January 2, 1915:
The decree appealed from is affirmed on the opinion of the learned president judge of the Orphans' Court.

---

# Rapaport *v.* Pittsburgh Railways Co., Appellant.

*Negligence—Street railways—Infants—Contributory negligence of parents—Binding instructions.*

A mother who sends an unattended child of tender years across a street traversed by a double line of fast moving electric cars when she sees a car standing not more than 100 feet away and likely to start at any moment is guilty of contributory negligence and for the child's injuries sustained in consequence of being struck by the car the parents cannot recover damages from the street railway company.

Argued Oct. 14, 1914. Appeals, Nos. 88 and 89, Oct. T., 1914, by defendant, from judgment of C. P. Allegheny Co., Nov. T., 1911, No. 498, on verdict for P. Rapaport, plaintiff, in case of P. Rapaport and Israel Rapaport, by his next friend and father, P. Rapaport, v. The Pitts-